UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:03CV-003-M

EDWARD LEE SUTTON, LESTER H. TURNER,
LINDA JOYCE FORD, TIMOTHY D. MAY,
LADONIA W. WILSON, ROBIN LITTLEPAGE,
ROBERT R. TEAGUE, and TABITHA NANCE
Individually and on behalf of all other similarly situated           PLAINTIFFS

V.

HOPKINS COUNTY, KENTUCKY and
JIM LANTRIP, Individually and in his official
capacity as Jailer of Hopkins County, Kentucky                       DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss by Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County [DN 58]. Fully briefed, this matter stands ripe for decision. For the following reasons, Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) is **DENIED**.

### I. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir.1996), cert. denied, 520 U.S. 1251 (1997). A judge

may not grant a Fed. R. Civ. P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Wright v. MetroHealth Medical Center, 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996). A Fed. R. Civ. P. 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994).

The standard of review requires that a plaintiff plead more than bare legal conclusions. Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir.1996). The complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Gazette, 41 F.3d at 1064. "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Lillard, 76 F.3d at 726 (citation omitted). In deciding a motion to dismiss, the Court may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken. Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir.1995).

## II. BACKGROUND

This case involves a series of incidents that allegedly occurred at the Hopkins County Jail from January 9, 2002 to the present. The Plaintiffs are a class of former inmates of the Hopkins County Jail who were allegedly forced to submit to strip-searches. As a result of what they view as violations of their constitutional rights, the Plaintiffs brought this action against Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County, Kentucky.

The first Complaint was filed on January 9, 2003. An Amended Complaint was subsequently filed on March 18, 2005.[1] The Court also certified the class on that day pursuant to an Agreed Order. The parties agreed that the class should be divided into two subclasses. The first subclass "consists of all individuals arrested for minor offenses who were required to remove their clothing for a visual inspection on admission to the Jail despite the absence of any reasonable suspicion that they were carrying or concealing weapons or contraband." This first subclass may be referred to as the "entry" class. The second subclass "consists of all persons who were required by Defendants in the Jail, just after becoming entitled to release, to remove all of their clothing for a visual inspection despite the absence of any reasonable grounds for doing so." This second subclass may be referred to as the "release" class.

In their motion to dismiss, Defendants make the following arguments: that Plaintiffs failed to exhaust their administrative remedies under the Prison Litigation Reform Act ("PLRA"), that Plaintiffs cannot recover absent a showing of physical injury under the PLRA, even for nominal and punitive damages, that most of the Plaintiffs' claims are barred by the statute of limitations, that the Plaintiffs in the "entry" class are not typical of those in the "release" class, that the amended complaints do not relate back to the original Complaint, that the Agreed Order certifying the class does not bar the Defendant's current challenge to the merits of Plaintiffs' claims and the timeliness of this action, and that certain named and

---

[1] Plaintiffs also filed a Second Amended Complaint on June 8, 2005.

unnamed Plaintiffs lack standing. The Plaintiff has responded and the Court's discussion of the issues follows.

### III. DISCUSSION

**A. Applicability of the PLRA**

The Defendants contend that the PLRA is applicable to both current as well as former prisoners. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Plaintiffs in this action are former prisoners; thus, the applicability of the PLRA as to their case hinges upon the interpretation of the word "prisoner." 42 U.S.C. § 1997e(h) defines the term prisoner "as any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

All appellate courts which have considered the issue have held that the term "prisoner" does not apply to those who have been released. See Ahmed v. Dragovich, 297 F.3d 201, 210 n. 10 (3d Cir. 2002) (citing the decisions of several circuits). Furthermore, a sister court in this circuit has held that,

> The plain language of the PLRA suggests that former prisoners do not fall within its scope as §§ 1997e(a), (e), and (h) speak of those prisoners "confined in a jail, prison or other correction facility" or "incarcerated or detained," a status to be determined at the time the suit is "brought." § 1997e(a), (e), & (h). The Sixth Circuit has yet to address this issue, but it is widely held that

> "prisoner" means someone confined, incarcerated, or detained, not a former prisoner. (citations omitted)....In this matter, it is clear that a literal application of § 1997(e) does not find itself "demonstrably at odds with the intentions of its drafters."(citation omitted). The plain language of the statute is clear and bolstered by the legislative history of § 1997e, suggesting not only Congressional intent to relieve the court system of the burden of excessive petitioning on the part of those incarcerated persons but also an intent to first permit those charged with the responsibility for jail and prison facilities to remedy wrongs that occur on their watch and to improve conditions for those incarcerated under their care. See, e.g., 141 Cong. Rec. § 14408-01, § 14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole); Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999). These goals will not be subverted by holding that the PLRA does not apply to former prisoners. In fact, this Court finds Defendants' proposed interpretation to be nonsensical. To require former prisoners to initiate or pursue those internal, administrative remedies once they have left the confines of a facility is a strained application of § 1997e at best. n7 Former prisoners are no longer members of the community that such administrative processes and limitations are meant to serve. This is particularly so with those prisoners who are incarcerated for short periods of time as their opportunity to initiate and pursue administrative remedies while incarcerated is temporally limited at best.

Smith v. Franklin County, 227 F. Supp. 2d 667, 675-676 (E.D. Ky. 2002). See also Black v. Franklin County, Kentucky, No. 3:05-18-JMH, 2005 WL 1993445, at *4 (E.D. Ky. Aug 16, 2005) (noting that the position that the PLRA applies to former prisoners "is decidedly the minority view." (citations omitted).

This Court joins the majority of courts which have held the PLRA inapplicable to those who persons who file claims after their release from prison. This conclusion is supported by the plain language of the PLRA and the Defendant's policy rationale for a contrary decision is rejected. Thus, the Court holds that the PLRA does not apply to this action, and it is immaterial that the Plaintiffs failed to first exhaust any administrative

remedies.[2]

### B. Physical Injury Requirement of the PLRA

The Defendants argue that even if the Court finds the PLRA to be inapplicable to former prisoners, the Court should adopt a requirement that only plaintiffs who can show a "physical injury" can state a claim. The Plaintiffs again argue that the PLRA is inapplicable to former prisoners.

Defendants support their argument by citing Cox v. Malone, 199 F.Supp.2d 135, 140 (S.D.N.Y. 2002), aff'd Cox v. Malone, No. 02-161, 2003 U.S. App. LEXIS 3008 (2d Cir. Feb. 20, 2003), which held that,

> The reasoning of Greig cannot be extended to the physical injury requirement of section 1997e(e). Section 1997e(a) is a procedural requirement requiring prisoners to fully exhaust their claims within the prison system before bringing a federal action. It makes no sense to apply this procedural requirement to former inmates who can no longer avail themselves of prison grievance procedures. Section 1997e(e), on the other hand, is a substantive limitation on the type of actions that can be brought by prisoners. Its purpose is to weed out frivolous claims where only emotional injuries are alleged.

The Cox opinion has been criticized, though, including by a sister court in this circuit:

> In Cox v. Malone, 199 F. Supp. 2d 135, 139-40 (S.D.N.Y. 2002), the district court attempted to distinguish circuit precedent that the exhaustion requirement did not apply to former prisoners as a "procedural requirement" and held that the damage limitation did apply to former prisoners because it is a "substantive limitation." This Court cannot accept that distinction, however, because it ignores the plain language of the statute. Subsections (a) and (e) both refer only to "a prisoner confined in a jail, prison, or other correctional facility." The court in Smith v. Franklin County stated: The Sixth Circuit has yet to address

---

[2]Since the PLRA does not apply to this action, the Court need not consider whether Plaintiffs could have recovered only nominal and punitive but not compensatory damages for violations of their constitutional rights by the Defendants had the PLRA been applicable.

> this issue, but it is widely held that "prisoner" means someone confined, incarcerated, or detained, not a former prisoner. (citations omitted). This Court agrees with that observation and further holds that there is no principled way to construe one section to include only current prisoners and expand the other to apply to former prisoners.

Rose v. Saginaw County, No. 01-10337-BC, 2005 U.S. Dist. LEXIS 29567, at *31-*32 (E.D. Mich. Nov. 21, 2005).

The Court agrees with Rose. The statute is clear in defining the term "prisoner," and there is "no principled way to construe one section to include only current prisoners and expand the other to apply to former prisoners." Thus, the absence of a physical injury is no bar to the Plaintiff's claims.

### C. Statute of Limitations, Tolling and Typicality

"[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974). The Defendants argue that the statute of limitations for the claims asserted in the First Amended Complaint was not tolled because those claims are not typical of the claims brought in the original Complaint. Specifically, the Defendant argues that only claims typical of the "release" class were asserted in the original Complaint and thus, only the statute of limitation of those type claims were tolled. Thus, the claims of the "entry" class were required to be brought with one year of the date of their search upon "entry." Defendant asserts that all "entry" class claims are time-barred.

The Court rejects the Defendants' argument. The original Complaint asserted a broad

class claim and defined the class as "all persons arrested for minor offenses who were required by Defendants, in the Hopkins County Jail, to remove their clothing for a visual inspection when there was no reasonable grounds for believing that weapons or contraband had been concealed on or in their bodies." According to settled law, the limitations period for all those in the purported class is tolled until the class is certified. The so-called "entry" class members are clearly within the purported class as stated in the original Complaint.

The Defendants further argue the point of typicality by contending that unique defenses as to the "release" class defeats typicality. This argument is one that should have been made prior to the class being certified. However, the Defendant's initial opposition to certification did not mention this lack of typicality. More importantly, the Defendant entered into an Agreed Order certifying the class, essentially agreeing that the typicality requirement was met. The fact that a "release" subclass was certified should allow for any defenses to be made as against that subclass.

### D. Standing

The Defendants' final argument challenges the standing of certain members of the class. Specifically, the Defendants assert that those persons who had not yet been allegedly strip-searched at the time the original Complaint was filed do not have standing to join this suit as a party or member. The Defendants' motion is hinged on the proposition that standing is to be determined at the time the complaint is filed. Defendants reason that since the definition of the class includes those subjected to unconstitutional strip-searches between January 9, 2002 to the present, many of those included in the class lack standing because they

had not suffered injury at the time the original Complaint was filed.

Regarding standing in class actions, the Supreme Court in <u>Sosna v. Iowa</u>, 419 U.S. 393, 402 (1975) found that,

> There must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, n11 but there must be a live controversy at the time this Court reviews the case. (citation omitted).

The standing requirement of the named Plaintiff in the original Complaint has been met. The question of whether to include others in a class who may have suffered the same constitutional injury as the named plaintiffs is a question of class definition, not standing.

Under Defendants' logic anyone subjected to an unconstitutional search after January 9, 2003, does not have standing to join in this class action. Presumably, Defendants incorrectly believe such claims would now be time-barred. In <u>Crown, Cork & Seal Co., Inc. v. Parker</u>, 462 U.S. 345, 353, (1983), the Supreme Court stated,

> We conclude, as did the Court in <u>American Pipe</u>, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S., at 554, 94 S.Ct., at 766. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

In this case, the statute of limitations on the claims of all those subjected to unconstitutional searches after January 9, 2003 was tolled by virtue of the filing of the original Complaint. Those claimants were included within the class as it was defined and certified by terms which were agreed to by the Defendants. If this Court should now redefine

the class to exclude all those who suffered unconstitutional searches after the date of the filing of the original Complaint, then the class action would be decertified. The statute of limitations would be extended on those claims to allow those persons to pursue their individual claims. Obviously, the Defendants at one time believed that handling all these claims in one class action was superior to all other methods of adjudication or else they would not have agreed to the definition of the class. If that thinking has changed, Defendants should file an appropriate motion advancing legitimate reasons to redefine the class at this stage of the litigation.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss [DN 58] is **DENIED**.

cc: counsel of record
03cv-003Sutton1