## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO: 4:03CV-003-M**

**EDWARD LEE SUTTON, LESTER H. TURNER,
LINDA JOYCE FORD, TIMOTHY D. MAY,
LADONIA W. WILSON, ROBIN LITTLEPAGE,
ROBERT R. TEAGUE, and TABITHA NANCE**
Individually and on behalf of all other similarly situated                                          **PLAINTIFFS**

**V.**

**HOPKINS COUNTY, KENTUCKY and
JIM LANTRIP, Individually and in his official
capacity as Jailer of Hopkins County, Kentucky**                                                  **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion by Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County, to decertify the class [DN 95]. Fully briefed, this matter stands ripe for decision. For the following reasons, Defendants' Motion to Decertify is denied.

### I. BACKGROUND

This case involves a series of incidents that allegedly occurred at the Hopkins County Jail from January 9, 2002 to the present. The Plaintiffs are a class of former inmates of the Hopkins County Jail who were allegedly forced to submit to strip-searches. As a result of what they view as violations of their constitutional rights, the Plaintiffs brought this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County,

Kentucky.

This action was originally filed by Plaintiffs Edward Lee Sutton and Lester H. Turner "in their individual capacities and on behalf of all persons arrested for minor offenses who were required by Defendants in the Hopkins County Jail to remove their clothing for visual inspection despite the absence of any reasonable grounds for believing they were concealing weapons or contraband." (Complaint at ¶ 1.)  On March 16, 2005, the Court entered an Agreed Order granting Plaintiffs' motion for class certification.  The Court's Order certified two subclasses – the "Release Class" and the "Admissions Class" – defined as follows:

> a. All persons arrested for minor offenses who were required by Defendants in the Hopkins County Jail ("Jail"), after becoming entitled to release, to remove their clothing for a visual inspection.  This class of individuals includes individuals who were strip searched just prior to their release from the Jail after they were ordered released on their own recognizance[;] individuals who were strip searched just prior to release from the Jail after they were ordered released on bond and subsequent to posting of bond; and any individuals who were strip searched just prior to their release from Jail for any other reason; and
>
> [b.] All persons arrested for non-violent, non-drug related misdemeanor offenses who were required by the Defendants in the Jail to remove their clothing for visual inspection on admission to the Jail despite the absence of any reasonable suspicion that they were carrying or concealing weapons or contraband.

(Class Certification Order, 3/16/05, ¶¶ 2-3.)  Each of these classes includes all persons who were so treated from January 9, 2002, to the present. (Id. at ¶ 4.)

The Named Class Representatives of the Release Class are Edward Lee Sutton, Lester Turner, Ladonia W. Nelson, Robin Littlepage, Robert R. Teague, Tabitha Nance, Timothy May and Linda Ford.  (Third Amended Complaint at ¶ 2.)  Plaintiffs allege that each

2

representative was subject to a strip search prior to their release from the jail. (Id. at ¶¶ 17-24.)  The Named Class Representatives of the Admissions Class are Plaintiffs Linda Joyce Ford, Timothy D. May, Ladonia W. Nelson, Robin Littlepage, Robert R. Teague, Tabitha Nance, Daniel Todd and Tony Ward.  (Id. at ¶ 3.)   Plaintiffs allege that each of these Plaintiffs was admitted to the Jail following the arrest on minor, non-weapons-related, non-drug-related offenses, including writing bad checks, failure to appear, and traffic violations. (Id. at ¶¶ 17-24.)  Plaintiffs allege that upon admission to the jail, each representative was forced to remove his or her clothes and submit to a visual strip search inspection. (Id.)

Defendants now argue that the Class should be decertified because it fails to comply with the requirements of Fed. R. Civ. P. 23.

## II.  LEGAL STANDARD FOR CLASS CERTIFICATION

The Supreme Court requires a district court to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class.  In re American Medical Systems, Inc., 75 F.3d 1069, 1078-79 (6th Cir. 1996).  The district court has broad discretion in determining whether to certify a class, but that discretion must be exercised within the framework of Fed. R. Civ. P. 23.  Id.; Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 62-63 (S.D. Ohio 1991).  In determining whether to certify a class, the Court assumes the truth of the allegations in the complaint and does not consider the merits of the action.  Bradberry v. John Hancock Mutual Life Insurance Co., 222 F.R.D. 568 (W.D. Tenn. 2004);  In re Cincinnati Radiation Litigation, 187 F.R.D.549 (S.D. Ohio 1999). The party seeking certification bears the burden

of proof. In re American Medical Systems, Inc., 75 F.3d at 1079; Boggs, 141 F.R.D. at 63. To meet this burden, Plaintiffs must show that all four prerequisites of Rule 23(a) are satisfied. The requirements of Rule 23(a) are as follows:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Once these conditions are satisfied, the party seeking certification must then demonstrate that the class falls within one of the subcategories of Rule 23(b).

Pursuant to Fed. R. Civ. P. 23, the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. Richardson v. Bryd, 709 F.2d 1016, 1019 (5th Cir.), cert. denied, 464 U.S. 1009 (1983); Bradberry, 222 F.R.D. at 571. "The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." Richardson, 709 F.2d at 1019. Therefore, the Court may alter or amend certification if the requirements are no longer met. See Bradberry, 222 F.R.D. at 571 (citing Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1214 (6th Cir. 1997); Stastny v. Southern Bell Tel. & Tel. Co., 628 F.2d 267, 276 (4th Cir.1980)). See also Fed. R. Civ. P. 23(c)(1)(C)("An order under Rule 23(c)(1) may be altered or amended before final judgment."). In fact, "the district court may decertify a class if there is a subsequent showing that the grounds for granting certification no longer exist or never existed." McGee v. East Ohio Gas Co., 200 F.R.D. 382, 387 (S.D. Ohio 2001)(citing General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).

Defendants argue that the Court should exercise its power under Fed. R. Civ. P. 23(c)(1)(C) and decertify the present class. Defendants maintain that it has become apparent during the litigation that each claim by each potential class member will require a detailed inquiry into the alleged strip search in order to ascertain whether such person can even become a member of the class, resulting in a lack of commonality required by Fed. R. Civ. P. 23(a)(2), a lack of fair and adequate representation required by Fed. R. Civ. P. 23(a)(4) and a lack of predominance of common questions of law or fact required by Fed. R. Civ. P. 23(b)(3). According to Defendants, given the vast number of class members involved in the present action, the individualized inquiries would present an insurmountable administrative burden which would render the controversy unmanageable as a class action. The Court will address these arguments in turn.

### III. DISCUSSION

#### A. Rule 23(a)

**1. Numerosity**

Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder "impracticable." Relying on jail records, Plaintiffs assert that there are at least 7,000 members of the proposed class. This is sufficient to satisfy the numerosity requirement. Defendants do not challenge this conclusion. See Blihovde v. St. Croix Co., Wis., 219 F.R.D. 607, 616 (W.D. Wis. 2003).

**2. Commonality**

To satisfy Rule 23(a)(2), the proponents of certification of the class must demonstrate

that "there are questions of law or fact common to the class."

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). . . . Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." Id. at 701 . . . . For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." [General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155 (1982)].

In re American Medical Systems, 75 F.3d at 1080.

The Sixth Circuit has held that the commonality test is qualitative rather than quantitative, "that is, there need be only a single issue common to all members of the class." In re American Medical, 75 F.3d at 1080; Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir.), cert. denied, 524 U.S. 923 (1998). Additionally, "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988)(cited with approval in In re American Medical, 75 F.3d at 1080).[1]

In challenging the Plaintiffs' satisfaction of the commonality requirement, Defendants argue that the Hopkins County Jail strip searches persons pursuant only to a written jail policy. According to Defendants, each Plaintiff and potential class member in this case could

---

[1]Unlike Rule 23(b)(3), which also requires that such common questions predominate over individual questions, the existence of significant common legal or factual issues is enough to meet Rule 23(a)(2)'s threshold commonality requirement.

6

have been stripped searched for any number of reasons – including a claimant's criminal background, jail file and any other conduct "that would invoke reasonable suspicion." (Defendants' Motion to Decertify at 16.) Defendants maintain that the commonality requirement is not satisfied in the present case because a "blanket" strip-search policy does not exist and because of differences that may arise in establishing an individual class member's right to recover, "such as assessing the reasonableness of each search and determining damages." Blihovde, 219 F.R.D. at 616.

The Court finds that Defendants' arguments "do not demonstrate that there are no common questions of law or fact," id., and are more applicable to Rule 23(b)(3)'s predominance requirement analysis. The commonality requirement does not mean all questions of law and fact must be identical, but rather that an issue of law and fact exists that inheres in the complaints of all the class members. See In re American Medical, 75 F.3d at 1080; Cook v. Rockwell International Corp., 181 F.R.D. 473 (D. Colo. 1998). "When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 3.10 at 3-51 (3d ed. 1992).

Plaintiffs have alleged that the Defendants had a policy, custom, or practice of strip-searching persons on admission to and/or just prior to release from the Hopkins County Jail without regard to whether there existed the requisite individual, reasonable suspicion required by law. Given this allegation, the existence and constitutionality of the county's

7

policy, custom or practice are common questions. Therefore, just as in Eddleman, common legal theories therefore bind the class. Eddleman v. Jefferson County, Kentucky, 1996 WL 495013, *4 (6th Cir. August 29, 1996). As noted by the Sixth Circuit, "[t]his is true even where the putative plaintiff is subject to a full strip search instead of a partial one, or the fact that some individuals may fail to meet the qualifications for the class because it can be shown that there was reasonable suspicion to search them or the fact that some potential plaintiffs may decide to 'opt-out.'" Id. at *4. In the present case, Plaintiffs allege similar conduct by the same Defendants. Id. Therefore, the Court finds that the commonality requirement of Rule 23(a)(2) has been met. Boggs, 141 F.R.D. at 64.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the proponents of class certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." See Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.), cert. denied, 429 U.S. 870 (1976). "'[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" In re American Medical, 75 F.3d at 1082 (quoting Newberg and Conte, § 3.13 at 3-76). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Newberg and Conte, § 3.13 at 3-77. Because each named Plaintiff alleges an unconstitutional strip search after

arrest for a minor violation or before release from jail, the claims of the representatives are typical of the class as a whole.  See, e.g., Eddleman, 1996 WL 495013, *4; Dodge v. County of Orange, 226 F.R.D. 177, 181 (S.D.N.Y. 2005); Blihovde, 219 F.R.D. at 619.

### 4. Adequacy of Representation

Finally, to satisfy the requirement of Rule 23(a)(4), the proponents of certification must demonstrate that 'the representative parties will fairly and adequately protect the interests of the class."

The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" In re American Medical, 75 F.3d at 1083 (quoting Senter, 532 F.2d at 525); Boggs, 141 F.R.D. at 66.  Rule 23(a)(4) tests "'the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." In re American Medical, 75 F.3d at 1083 (quoting Cross v. National Trust Life Insurance Co., 553 F.2d 1026, 1031 (6th Cir. 1977)). "'[I]f there is more than one named representative, it is not necessary that all the representatives meet the Rule 23(a)(4) standard; as long as one of the representatives is adequate, the requirement will be met.'" Cook v. Rockwell Intern. Corp., 151 F.R.D. 378, 387 (D. Colo. 1993)(quoting 7A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, § 1765 at 277 (2d ed. 1986)).

Defendants assert that no member of the Class could ever fairly and adequately protect

the interest of the class because the Court must conduct mini-trials of each Plaintiff's claim and determine whether a strip search occurred and, if so, whether there was reasonable suspicion to conduct the search. The Court finds that the named Plaintiffs have common interests with unnamed members of the class. As discussed above, the Plaintiffs have asserted claims typical of other class members. Specifically, Plaintiffs have alleged that the Defendants had a policy, custom, or practice of strip-searching persons on admission to and/or just prior to release from the Hopkins County Jail without regard to whether there existed the requisite individual, reasonable suspicion required by law. No evidence exists that the representative Plaintiffs differ from the class members in any significant circumstance with respect to this issue which would obstruct their ability to vigorously represent the proposed class.

Furthermore, the Defendants in this case do not challenge the qualification or ability of Plaintiffs' counsel to effectively represent the class. The Court has reviewed and considered the qualifications of Plaintiffs' counsel and find that counsel have sufficient experience and ability to fairly and adequately represent the interest of the class.

The Court finds that the named Plaintiffs adequately represent the interests of the class as a whole and that the requirements of Rule 23(a)(4) have been satisfied.

### B. Rule 23(b) Requirements

After satisfying Rule 23(a)'s four prerequisites, the party seeking certification must demonstrate that the action satisfies one of the requirements of Rule 23(b). Plaintiffs contend that continued certification of the class is proper under Rule 23(b)(3).

A class action may be maintained under Rule 23(b)(3) if the Court finds "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) of Rule 23 in that both require that common questions exist, but subdivision (b)(3) contains a more stringent requirement that common issues "predominate" over individual issues. In re American Medical, 75 F.3d at 1084. The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). "The court, therefore, must balance concerns regarding issues common to the class as a whole with questions affecting individual class members." O'Connor v. Boeing North America, Inc., 184 F.R.D. 311, 339 (C.D. Cal. 1998). However, "'[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.'" Blihovde, 219 F.R.D. at 620 (citing Newburg & Conte, § 4.25 at 4-84).

Defendants argue that Plaintiffs fail to satisfy the predominance requirement of Rule 23(b)(3) because individual issues regarding class membership and personal damages will predominate over the common issues identified by Plaintiff. See Noon v. Sailor, 2000 WL 684274 (S.D. Ind. March 14, 2000). Defendants contend that the Hopkins County Jail had a written policy that required an "individual assessment" before a strip search could take place, and as a result, this fact defeats Plaintiffs' argument of predominance and distinguishes

11

the case from Eddleman. Defendants maintain that if this case were to proceed to trial, the Court would be required to hold mini-trials on each and every claim to determine class membership, if the class member was strip searched, and if so, whether Defendants had reasonable suspicion for doing so. Defendants further argue that the case has become unmanageable and, as a result, Plaintiffs have also failed to meet the superiority requirement.

**1. Predominance**

"[C]ase law suggests that, when a uniformly applied policy is challenged, the validity of the policy predominates over individual issues." Dodge v. County of Orange, 226 F.R.D. 177, 181 (S.D.N.Y. 2005). Consistent with this principle, the Sixth Circuit found class certification appropriate in a case in which the plaintiff class challenged a blanket or uniform strip search policy, despite the presence of some factual variation in the claims. Eddleman v. Jefferson County, 1996 WL 495013 (6th Cir. August 29, 1996). See also Tardiff v. Knox County, 365 F.3d 1, 7 (1st Cir. 2004)(affirming certification of two 23(b)(3) strip search liability classes); Dodge, 226 F.R.D. 177; Calvin v. Sheriff of Will County, 2004 WL 1125922, *3-5 (N.D.Ill. May 17, 2004)(certifying 23(b)(3) liability strip search sub-classes); Blihovde v. St. Croix County, Wisconsin, 219 F.R.D. 607, 622-23 (W.D.Wis. 2003)(certifying 23(b)(3) strip search class); Maneely v. City of Newburgh, 208 F.R.D. 69, 78-79 (S.D.N.Y. 2002)(certifying 23(b)(3) strip search class as to the issue of whether defendants had an unconstitutional policy). In the present case, Plaintiffs have alleged that the Defendants had a policy, custom, or practice of strip-searching persons on admission to and/or just prior to release from the Hopkins County Jail without regard to whether there

existed the requisite individual reasonable suspicion required by law. (Third Amended Complaint ¶¶ 2, 3, 4, 7, 8, 10, 25 and 27.) Additionally, Plaintiffs have presented the deposition testimony of Donald Gossett, who was employed at the jail from December 2000 to January 2002. Gossett testified that it was the Jail's policy to strip-search everyone entering the Jail's general population, returning from Court, and just prior to release. (Gossett Dep. at 14, 18-19, 22-25.) Thus, consistent with Eddleman, the issues of the existence of the policy or custom, the constitutionality of the policy or custom, and whether that policy or custom was applied to the Plaintiff class are the predominant liability issues in this case. See Dodge, 226 F.R.D. at 182.

Defendants disagree and argue, first, that Eddleman does not apply to the present case because the written policy of the Hopkins County Jail reflects that a blanket strip search policy did not exist at the Jail. Specifically, Defendants argue that the written policy of the Hopkins County Jail, unlike the written policy in Eddleman, clearly requires the deputy jailers to conduct an "individualized assessment" prior to each strip search. Contrary to Defendants' argument, the existence of this written strip search policy by the Hopkins County Jail does not distinguish the present case from Eddleman nor bar the Plaintiffs' class action claim. Just as in Eddleman, Plaintiffs have consistently alleged that the Hopkins County Jail had a widespread policy, custom or practice to strip search all persons who entered the Jail, regardless of the individual circumstances. And, just as in Eddleman, "[t]he basis for the complaint . . . arises precisely because the Defendants did not conduct an individualized assessment of the need for each search." Eddleman, 1996 WL 495013, *5.

13

Ultimately, a reasonable jury could find that the Hopkins County Jail failed to follow its written policy, and instead followed a custom or practice to strip search all persons on admission to the jail or release from the jail without regard to whether there existed reasonable suspicion to do so.

Defendants also argue that the questionnaires demonstrate that the Hopkins County Jail did not have a blanket policy of strip-searching all persons. For example, Defendants state that in 32 of the 750 questionnaires returned to Plaintiffs' counsel, the respondent denied being strip searched at the Hopkins County Jail. Further, Defendants argue that of the 718 persons claimed to have been strip searched, 413 deny having been strip searched on release. Assuming Defendants' assessment of the questionnaires are true, it does not establish the absence of any policy, custom, or practice. See Blihovde, 219 F.R.D. at 618. "Defendants cite no authority holding that a custom does not exist if there is even one exception to the rule." Id. at 618. Instead, a custom is a widespread practice. Whether Plaintiffs can ultimately prove the existence of a policy or custom is an issue to be resolved at trial.

Second, Defendants maintain that under the current Entry Class definition, the Court would be required to hold mini-trials on each claim to determine class membership. The Entry Class is defined as "[a]ll persons arrested for non-violent, non-drug related misdemeanor offenses who were required by the Defendants in the Jail to remove their clothing for visual inspection on admission to the Jail despite the absence of any reasonable suspicion that they were carrying or concealing weapons or contraband." The Court agrees

with the Defendants that the language of the current Entry Class definition is susceptible to an interpretation that in order to establish class membership, the Court is required to determine "the absence of any reasonable suspicion" with respect to each potential class member. However, an examination of the Third Amended Complaint reveals that the basis of the complaint is a broad general claim that the Hopkins County Jail had a policy, custom or practice of strip searching all persons admitted to and/or released from the jail without regard to whether they were carrying or concealing weapons or contraband. (Third Amended Complaint at ¶ 2, 3, 4, 7, 8, 10, 25, 27.) To avoid any confusion and to conform to the Third Amended Complaint, the Court *sua sponte* amends the Entry Class definition as follows: "All persons arrested for non-violent, non-drug related misdemeanor offenses who were required by the Jail to remove their clothing for visual inspection on admission to the Jail without regard to whether they were carrying or concealing weapons or contraband."

Third, Defendants argue that individual issues predominate as it relates to the class damage claims, and as a result, decertification of the class is necessary. The Court disagrees. Although Defendants are correct that there may be some variation in the class members' amount of damages, numerous cases exists "in which courts have rejected arguments that differences in damages among the class members should preclude class certification." Blihovde, 219 F.R.D. at 621 (citing Mayer v. Mylod, 988 F.2d 635, 640 (6th Cir. 1993)). "Varying damage levels rarely prohibit a class action if the class members' claims possess factual and legal commonality." Eddleman, 1996 WL 495013, * 6. When damages vary, the court may bifurcate the lawsuit so that the defendants' liability can be determined initially.

15

Blihovde, 219 F.R.D. at 621("If there are genuine common issues . . . then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.'" Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003)). Additionally, courts have also recognized the use of a magistrate or special master to address any individualized issues including damages or decertification of the class after a finding of liability.

Given these reasons, the Court finds that the potential for varying claims of damages does not mandate class decertification. Instead, the Court will bifurcate the lawsuit permitting the Defendants' liability to be determined initially. In the event a jury determines that the Hopkins County Jail maintained an unconstitutional blanket strip search policy, the Court will then determine the best approach for the second phase of the litigation.

Fourth, the Court recognizes that potential individual issues may exist if, regardless of the Hopkins County Jail's uniform policy, "some plaintiffs were strip searched based upon 'reasonable and contemporaneously held suspicion.'" In re Nassau Co. Strip Search Cases, 461 F.3d 219, 230 (2d Cir. 2006). See also Blihovde, 219 F.R.D. at 621 (Even if the county's strip-search policy or custom violates the Fourth Amendment, a defendant may avoid liability to particular class members "if an officer had reasonable suspicion to believe that a class member was concealing weapons or contraband.").[2] Courts generally recognize

---

[2] See also Kraushaar v. Flanigan, 45 F.3d 1040, 1045 (7th Cir. 1995); Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1273 (7th Cir. 1983); Maneely, 208 F.R.D. at 77-78 (use of

that "if plaintiffs can establish that defendants had an unconstitutional strip search policy or custom, defendants will have the burden to show that a particular search was reasonable." Blihovde, 219 F.R.D. at 622; Doe, 754 F. Supp. at 1220; Mack v. Suffolk County, 191 F.R.D. 16, 24 (D. Mass. 2000)("To require Plaintiff to prove that each individual search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Given that these [persons] were routinely strip-searched, the burden rests on Defendants to demonstrate that particular searches were reasonable."). However, "[t]he existence of this defense does not foreclose class certification." In re Nassau Co. Strip Search Cases, 461 F.3d at 230 (citation omitted); Tardiff, 365 F.3d at 5-6. Any individual issues with respect to defenses and/or damages will be considered in the second phase of the litigation.

Finally, Defendants argue that individualized assessments will be necessary to determine if a potential class member was incarcerated when the suit was filed, or is currently incarcerated, thus, barring his or her claim under the Prison Litigation Reform Act. The Plaintiffs argue that the Court has already ruled that the PLRA was not applicable to this action. In a previous motion, the Defendants argued the case should be dismissed because none of the Plaintiffs had exhausted their administrative remedies as required by the PLRA. In a Memorandum Opinion and Order, the Court, noting that the Plaintiffs were all former prisoners, held that the PLRA did not apply to claims filed by former prisoners. The Court

---

unconstitutional strip search policy does not automatically render each search unconstitutional). Calvin v. Sheriff of Will County, 2004 WL 1125922, *4 n. 2 (N.D. Ill. May 17, 2004)("[I]n the event that defendants believe that specific searches or classes of searches had a reasonable antecedent justification, defendants are not precluded from offering proof that the subjects of those searches should be excluded from the class.").

17

has not answered the question presented now, which is whether the PLRA bars the claims asserted on behalf of current prisoners in a class action by Plaintiffs who are former prisoners. This is purely a legal question which needs to be resolved at some point during this litigation. However, the Court concludes that the question of whether certain class members' claims are barred by the PLRA does not warrant decertification of the class.

**2. Superiority**

For Rule 23(b)(3) certification to be proper, a class action also must be the most "fair and efficient" method of resolving this case. See Fed. R. Civ. P. 23(b)(3). In analyzing that question, courts must consider four nonexclusive factors: (1) the interest of the class members in maintaining separate actions; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action." See Fed. R. Civ. P. 23(b)(3).

First, the Court finds that litigating the existence of a uniform policy for the class as a whole would "both reduce the range of issues and promote judicial economy." Dodge, 226 F.R.D. at 184. "Every member of the class who did not opt out would be bound by a decision that there was, or was not, a uniform policy in effect during a particular time period." Id. Even if the second phase of the litigation is ultimately resolved on a non-class basis, "the issues and evidence relevant to these individual adjudications would be substantially narrowed." Id. (citation omitted). Additionally, given the fact that recovery of

many of the potential class members may be relatively small and that many of the class members may not be aware that they have a claim, the interest of individual class members in maintaining separate actions is also small.

Second, the action has already progressed substantially as a class action for over a year. Third, concentrating this litigation in one forum simplifies the litigation. As discussed above, the resolution of the existence of a uniform policy streamlines the case. Fourth, while the Court recognizes there may be some difficulties in management of the class action, these concerns can be adequately addressed with bifurcation of the issues. Therefore, the Court concludes that "a class action provides the most feasible and efficient method of determining liability." Blihovde, 219 F.R.D. at 622.

The Court concludes that Plaintiffs have satisfied the requirements of Rule 23(a) and (b)(3) with respect to their claims that the Defendants had an unconstitutional policy or custom of strip searching all persons for minor offenses on admission to and/or just prior to their release from jail regardless of the circumstances. If Plaintiffs prove there was an unconstitutional policy or custom, the Plaintiffs will be permitted to proceed with the second phase of the ligation. The structure of the second phase of the litigation will be addressed after the liability phase is resolved.

### IV. CONCLUSION

The Court finds that Plaintiffs have satisfied the prerequisites for certification of the class under Rule 23. For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that the motion by Defendants to decertify

the class [DN 95] is **denied**. The Entry Class definition is amended as follows: "All persons arrested for non-violent, non-drug related misdemeanor offenses who were required by the Jail to remove their clothing for visual inspection on admission to the Jail without regard to whether they were carrying or concealing weapons or contraband."

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for a scheduling conference to develop a litigation plan consistent with this Opinion. Prior to the scheduling conference, the parties shall review the notice of class certification mailed to prospective class members to ensure that it complies fully with Fed. R. Civ. P. 23(c)(2)(B), including an explanation (1) that a class member may enter an appearance through counsel if the member so desires, (2) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and (3) of the binding effect of a class judgment on class members under Rule 23(c)(3). Additionally, the notice will need to reflect the amended definition of the class. The modifications of the notice required by Rule 23(c)(2)(B) shall be discussed at the scheduling conference.

cc: counsel of record