### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO: 4:03CV-003-M**

**EDWARD LEE SUTTON, LESTER H. TURNER,**
**LINDA JOYCE FORD, TIMOTHY D. MAY,**
**LADONIA W. WILSON, ROBIN LITTLEPAGE,**
**ROBERT R. TEAGUE, and TABITHA NANCE**
**Individually and on behalf of all other similarly situated**          **PLAINTIFFS**

**V.**

**HOPKINS COUNTY, KENTUCKY and**
**JIM LANTRIP, Individually and in his official**
**capacity as Jailer of Hopkins County, Kentucky**          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiffs, Edward Lee Sutton individually and on behalf of the Plaintiff Class, for partial summary judgment and for a preliminary injunction [DN 135] and on a motion by Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County, for partial summary judgment [DN 142].   Fully briefed, this matter is ripe for decision.  For the reasons set forth below, Plaintiffs' motion for partial summary judgment and for a preliminary injunction is denied and Defendants' motion for partial summary is granted.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The Rule requires the nonmoving party to present "*specific facts* showing that there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.  It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

The Plaintiffs brought this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County, Kentucky.  This action was originally filed by Plaintiffs Edward Lee Sutton and Lester H. Turner "in their individual capacities and on behalf of all persons arrested for minor offenses who were required by Defendants in the

2

Hopkins County Jail to remove their clothing for visual inspection despite the absence of any reasonable grounds for believing they were concealing weapons or contraband." (Complaint at ¶ 1.) On March 16, 2005, the Court entered an Agreed Order granting Plaintiffs' motion for class certification. The Court's Order certified two subclasses – the "Release Class" and the "Admissions Class" – defined as follows:

> a.    All persons arrested for minor offenses who were required by Defendants in the Hopkins County Jail ("Jail"), after becoming entitled to release, to remove their clothing for a visual inspection. This class of individuals includes individuals who were strip searched just prior to their release from the Jail after they were ordered released on their own recognizance[;] individuals who were strip searched just prior to release from the Jail after they were ordered released on bond and subsequent to posting of bond; and any individuals who were strip searched just prior to their release from Jail for any other reason; and

> [b.]    All persons arrested for non-violent, non-drug related misdemeanor offenses who were required by the Defendants in the Jail to remove their clothing for visual inspection on admission to the Jail despite the absence of any reasonable suspicion that they were carrying or concealing weapons or contraband.

(Class Certification Order, 3/16/05, ¶¶ 2-3.) Each of these classes includes all persons who were so treated from January 9, 2002, to the present. (Id. at ¶ 4.)

The Named Class Representatives of the Admissions Class are Plaintiffs Linda Joyce Ford, Timothy D. May, Ladonia W. Nelson, Robin Littlepage, Robert R. Teague, Tabitha Nance, Daniel Todd and Tony Ward. (Id. at ¶ 3.)   Plaintiffs allege that each of these Plaintiffs was admitted to the Jail following the arrest on minor, non-weapons-related, non-drug-related offenses, including writing bad checks, failure to appear, and traffic violations. (Id. at ¶¶ 17-24.) Plaintiffs allege that upon admission to the jail, each representative was

3

forced to remove his or her clothes and submit to a visual strip search inspection. (Id.)

It is undisputed that until May 25, 2006, the Hopkins County Jail automatically strip searched all pretrial detainees transferred from other facilities – including those charged with non-violent, non-drug-related misdemeanors – without regard to the individual circumstances surrounding the transfer or other factors indicating a reasonable suspicion to believe the transferee is concealing weapons or contraband.  (Jim Lantrip Dep at 26-27, 51-53.)  Jailer Lantrip testified that transferees are strip searched out of a concern that the transferees might have obtained contraband either during their prior stay in the transferring facility or during their transportation to the Hopkins County Jail.

The parties have filed cross-motions for summary judgment regarding the constitutionality of this policy.  Plaintiffs argue that the Hopkins County Jail employs an unconstitutional blanket policy of strip searching all arrestees – including all non-violent, non-drug-related misdemeanor offenders – who are transferred to the Jail from another facility, without making any individualized determination whether there is reasonable suspicion that any particular transferee is concealing contraband or weapons.  Plaintiffs maintain that since this policy plainly violates the Fourth Amendment, they are entitled to partial summary judgment.  Plaintiffs also seek preliminary injunctive relief enjoining the Hopkins County Jail from continuing with the transferee policy or from reinstating the policy.

Defendants disagree arguing that the Hopkins County Jail's former procedure of strip searching those inmates who were transferred from another county jail is constitutional.

4

Defendants contend that the Jail implemented the former procedure on transfers because a transferee was exposed to areas to which the public had access before and/or during the transfer, increasing the likelihood that the inmate could possess contraband.  Defendants maintain that the procedure was implemented in light of the 501 KAR 3:120(3)(b) which provides in relevant part: "A prisoner may be strip searched only on reasonable suspicion . . . . Reasonable suspicion shall be based upon one . . . or more of the following: . . . (4) Contact with the public by a contact visit, court appearances that takes place in an area to which the public may have access, or *after transport from or through an area to which the public may have access* . . . ."  Defendants request partial summary judgment declaring this policy constitutional.

## III.  DISCUSSION

### A.  Law

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."   A strip search complies with the requirements of the Fourth Amendment so long as it is reasonable.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979).  A broad-based policy allowing strip searches without regard to individualized reasonable suspicion is evaluated by the test announced in <u>Bell v. Wolfish</u>.  <u>See</u>, <u>e.g.</u>, <u>Johannes v. Alameda Co. Sheriff's Dept.</u>, 2006 WL 2504400, *8 (N.D. Cal. August 29, 2006).  In <u>Bell v. Wolfish</u>, the United States Supreme Court upheld the constitutionality of a policy to strip search every inmate, including pretrial detainees, following a contact visit with persons from outside the institution.  The Supreme Court found that the possibility of smuggling drugs, weapons, and

5

other contraband into the institution presented significant and legitimate security interests.

In finding that the searches were reasonable under the Fourth Amendment, the Supreme

Court employed the following balancing test:

> The test of reasonableness under the Fourth Amendment is not capable of
> precise definition or mechanical application. In each case it requires a
> balancing of the need for the particular search against the invasion of personal
> rights that the search entails. Courts must consider the scope of the particular
> intrusion, the manner in which it is conducted, the justification for initiating
> it, and the place in which it is conducted.

Bell, 441 U.S. at 559.

Applying this balancing test to strip searches of arrestees charged with non-violent,

non-drug related misdemeanor offenses, the Sixth Circuit in Masters v. Crouch held that

Jefferson County, Kentucky's blanket policy of strip searching all pretrial detainees arrested

for a simple traffic violation in the absence of reasonable suspicion violated the detainees'

clearly established constitutional rights. Masters v. Crouch, 872 F.2d 1248, 1255 (6th Cir.

1989), cert. denied, 493 U.S. 977 (1989). According to the Sixth Circuit, while Bell v.

Wolfish does not validate a blanket policy of strip searching pretrial detainees, it does

authorize "'particularized searches where objective circumstances indicate such searches are

needed to maintain institutional security.'" Masters, 872 F.2d at 1253-54.  The Sixth Circuit

found that normally no threat to institutional security "exists when the detainee is charged

with a traffic violation or other nonviolent minor offense." Id. at 1255.  Additionally, the

Sixth Circuit rejected the defendant's argument that plaintiff's search was justified because

the plaintiff would come into contact with other prisoners.  The Sixth Circuit held that "[t]he

fact of intermingling alone has never been found to justify such a search without consideration of the nature of the offense and the question of whether there is any reasonable basis for concern that the particular detainee will attempt to introduce weapons or other contraband into the institution." Id. at 1254.

The Sixth Circuit concluded that a pretrial detainee has the right not to be searched unless the reasonableness of such a search is established by balancing the need for the particular search against the invasion of personal rights occasioned by the search. Masters, 872 F.2d at 1257 (citing Bell v. Wolfish, 441 U.S. at 559); see also Richerson v. Lexington Fayette Urban County Government, 958 F. Supp. 299, 305 (E.D. Ky. 1996). Applying this balancing test, the Sixth Circuit held that "[i]t was . . . clearly established that a person charged only with a traffic violation or nonviolent minor offense may not be subjected to a strip search unless there are reasonable grounds for believing that the particular person might be carrying or concealing weapons or other contraband." Masters, 872 F.2d at 1257.

Utilizing the standards articulated in both Bell v. Wolfish and Masters v. Crouch, two district courts in the Eastern District of Kentucky have addressed the constitutionality of strip searches of certain classes of pretrial detainees. In Richerson v. Lexington Fayette Urban County Government, 958 F. Supp. 299 (E.D. Ky. 1996), the district court upheld the constitutionality of a policy by the Fayette County Detention Facility to strip search all pretrial detainees upon return from a court appearance. The district court noted that the Supreme Court in Bell v. Wolfish "has counseled wide-ranging deference to prison officials in security matters." Id. at 306. Applying the balancing test for reasonableness set forth in

7

Bell v. Wolfish, the district court held that

> in circumstances like those presented here, where pretrial detainees, including those charged with minor, nonviolent offenses, are kept in a detention center's general population prior to arraignment, . . . and are thereafter put in a position where exposure to the general public presents a very real danger of contraband being passed to a detainee, a policy of strip searching the detainees upon their return from the courthouse and prior to their being placed back in the general population of the detention center is both justified and reasonable.

Richerson, 958 F. Supp. at 307.  According to the district court, "the detention center's legitimate security interests outweigh the detainees' privacy interests in such a situation." Id.

Based on the same reasoning, the district court in Black v. Franklin County, Kentucky, 2005 WL 1993445 (E.D. Ky. August 16, 2005), dismissed the claims of inmates and/or pretrial detainees who were strip searched after returning to jail from work release or from court appearances finding that those searches did not violate the plaintiffs' constitutional rights.

### B. Searches of Transferred Detainees

The issue before the Court is whether the policy of strip searching all detainees transferred from other facilities is reasonable under the balancing test set forth in Bell v. Wolfish.  The Court must balance "the need for the particular search against the invasion of personal rights that the search entails."  Bell, 441 U.S. at 559.  Doing so requires the Court to weigh "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Id.

The scope of the invasion of Plaintiffs' personal rights is significant.  "It is well

accepted that strip searches with visual body cavity inspection are extremely intrusive." Johannes, 2006 WL 2504400, *11 (citing Bell, 441 U.S. at 560).  The manner and place in which Plaintiffs were strip searched has not been challenged by the Plaintiffs.  Thus, the justification for the policy is the critical question.  Hopkins County Jail's justification for strip searching all persons transferred from another detention facility is to prevent the introduction of contraband into the facility that could expose the inmates and staff to harm.

"It is clear that a detention center has a legitimate interest in preventing the flow of contraband into the facility." Richerson, 958 F. Supp. at 306.  The Supreme Court in Bell v. Wolfish recognized that "[a] detention facility is a unique place fraught with serious security dangers.  Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." Bell, 441 U.S. at 559.  See also Richerson, 958 F. Supp. at 306.  A detainee who has been incarcerated in another facility has potentially been exposed to contraband, especially if the facility has lenient procedures with respect to court appearances, contact visits, medical programs and work programs.  Additionally, just as in Richerson, detainees that are transported from one facility to another are transported through areas to which the public may have access.  Therefore, these contacts outside of the jail provide opportunities for transferees, even those charged with non-violent, non-drug related offenses, to obtain contraband before they enter the Hopkins County Jail.

There appears to be no difference between detainees who are transported to court by a transporting officer and detainees who are transported from one correctional facility to another – both are likely to have access to areas to which the public may have access.

9

Defendants correctly point out that detainees who have been transferred from another facility may be more of a security risk than those who were merely transported to court or on work detail.  In the latter, the detention facility is aware of its own security practices and exercises control over the deputy jailers who supervise the detainees in court and on work detail.  In the case of a transferred detainee, the detention facility is unaware of the security practices of the other facility and has absolutely no control over the transporting officer who supervised the detainee during the transport.

Plaintiffs rely on Masters in urging the Court to find that the Hopkins County Jail's policy of strip searching detainees following transfer from another county detention facility is unconstitutional.   The Court is mindful that in Masters the Sixth Circuit, utilizing  the balancing test set forth in Bell v. Wolfish, found that "a strip search of a person arrested for a traffic violation or other minor offense not normally associated with violence and concerning whom there is no individualized reasonable suspicion that the arrestee is carrying or concealing a weapon or other contraband, is unreasonable,"  872 F.2d at 1255.  However, the Sixth Circuit in Masters did not address transferred detainees and the security concerns posed by such transfers.  Instead, Masters addressed the constitutionality of strip searching arrestees upon their initial arrival at the jail.  As distinguished by the district court in Richerson, Masters "was part of the initial booking procedure."  Richerson, 958 F. Supp. at 305.  While Plaintiffs in this case were charged with non-violent, non-drug related offenses, the facts and circumstances surrounding the strip searches in the present case following Plaintiffs' transfer to the Jail are distinguishable from those in Masters.  Id. at 306.  In fact,

10

the circumstances surrounding the searches in this case, including the security concerns, are more closely analogous to facts and circumstances justifying the search in <u>Richerson</u> and <u>Black</u>.[1]

According to the United States Supreme Court in <u>Bell</u>, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" <u>Bell</u>, 441 U.S. at 547-48. Applying the reasonableness test set forth in <u>Bell v. Wolfish</u>, the Court finds that the Jail's legitimate security interests discussed above outweigh the privacy interests of detainees who are transferred from another jail or facility. Accordingly, the Court concludes that Hopkins County Jail's policy of strip searching pretrial detainees who are transferred from other facilities is reasonable and justified.

---

[1]Plaintiffs have submitted two cases which involved the "transfer" of detainees to other facilities. <u>See</u> <u>N.G. and S.G. v. Connecticut</u>, 382 F.3d 225 (2d Cir. 2004) and <u>Ford v. City of Boston</u>, 154 F. Supp. 2d 131 (D. Mass. 2001). In <u>N.G. and S.G.</u>, the plaintiffs were juveniles who were strip searched pursuant to Connecticut's blanket strip search policy for all those admitted to juvenile detention centers. The Second Circuit upheld the searches of the juveniles upon initial entry into the custody of the State's juvenile authorities, but found that the repetitive searches conducted upon transfer to other juvenile detention centers operated by the State of Connecticut was a violation. The Court finds this case distinguishable in that the State of Connecticut owned and operated all of the juvenile detention centers and transported the juveniles from one facility to another. Additionally, <u>Ford v. City of Boston</u> did not involve a detainee transferred from one county jail facility to another. Instead, in <u>Ford</u>, the plaintiffs were female detainees arrested by the Boston Police Department who processed in the normal manner at the police department and then transported to the Suffolk County Jail for detainment. These facts appear to be more analogous to <u>Masters</u> than the present case.

11

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiffs, Edward Lee Sutton individually and on behalf of the Plaintiff Class, for partial summary judgment and for a preliminary injunction [DN 135] is **denied** and the motion by Defendants, Hopkins County, Kentucky and Jim Lantrip, individually and in his official capacity as Jailer of Hopkins County, for partial summary judgment [DN 142] is **granted**.

cc: counsel of record